UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANALIA ACOSTA,

                        Plaintiff,

-against-

OFFICER MARCO FERRARO, JR.; OFFICER OSVALDO RAMOS; OFFICER SEBASTIAN SALAZAR; OFFICER BONACCI; OFFICER ROBERT IVERSON, III; LT. FALCONE,

                        Defendants.

**OPINION AND ORDER**

22-CV-01798 (PMH)

PHILIP M. HALPERN, United States District Judge:

On January 28, 2022, Analia Acosta ("Plaintiff") initiated this action against the Town of Mamaroneck and John Doe Defendants 1-6 in the Supreme Court of the State of New York, County of Westchester. (Doc. 1). Plaintiff added the Village of Mamaroneck as a Defendant on February 15, 2022. (*Id.*). On March 3, 2022, the Town of Mamaroneck removed the action to this Court. (*Id.*).

The Town of Mamaroneck filed its answer on March 17, 2022 (Doc. 8), and an initial conference was held on May 9, 2022 (Doc. 18). Thereafter, Plaintiff filed an Amended Complaint dropping both the Town and Village of Mamaroneck as named defendants and identifying the following officers of the Village of Mamaroneck police department as defendants: Officer Marco Ferraro, Jr., Officer Osvaldo Ramos, Officer Sebastian Salazar, Officer Bonacci, Officer Robert Iverson, III, and Lt. Falcone (collectively, "Defendants"). (Doc. 19, "FAC"). The sole remaining claim for relief in the Amended Complaint alleges malicious abuse of process pursuant to 42

U.S.C. § 1983. (*Id.*¶¶ 48-64).[1] Defendants filed their answer on October 24, 2022 (Doc. 37), and the parties engaged in discovery pursuant to a Civil Case Discovery Plan and Scheduling Order. (Doc. 33; Doc. 40; Doc. 43).

Defendants served their motion for summary judgment in accordance with the briefing schedule set by the Court. (Doc. 64; Doc. 65, "Goodman Decl."; Doc. 66, "Def. Br."; Doc. 67).[2] Plaintiff opposed Defendants' motion (Doc. 68, "Pl. Br."), and the motion was fully briefed with the filing of Defendants' reply papers (Doc. 69, "Reply").

For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, Defendants' Rule 56.1 Statement with Plaintiff's counterstatement and responses thereto, and the admissible evidence proffered by the parties.[3] Unless otherwise indicated, the facts cited herein are undisputed.

On October 16, 2021, at approximately 9:25 p.m., Defendants were dispatched to Plaintiff's residence at 501 North Berry Avenue, Apartment 3H, Mamaroneck, New York, to respond to a report of a fight in progress. (56.1 ¶¶ 1-2, 5-7, 12). About thirty minutes after

---

[1] The FAC asserts claims for (i) "assault/unlawful confinement" and (ii) "malicious prosecution/abuse of process" pursuant to 42 U.S.C. § 1983, as well as a conspiracy claim pursuant to 42 U.S.C. § 1985. (*See generally* FAC). Following a conference on September 19, 2022, Plaintiff waived her second claim for relief to the extent it raises a theory of malicious prosecution and retained the second claim for relief to the extent it raises a theory of abuse of process. (Doc. 32). Plaintiff also dismissed without prejudice any state law claims for relief. (*Id.*). Further, following a conference on November 29, 2023, Plaintiff withdrew her conspiracy claim pursuant to § 1985, and the Court dismissed the conspiracy claim with prejudice. (Doc. 58; Doc. 59).

[2] Citations to the documents referenced herein correspond to the pagination generated by ECF.

[3] The Court notes that Defendants set forth their fifty-paragraph statement of facts and then Plaintiff began her counter-statement of facts beginning again at number one. For the sake of clarity, the Court hereafter refers to the first section of the document as "56.1" (Doc. 67 at 1-12) and the second section as "CntrStmt." (*id.* at 12-16).

Defendants' arrival, the yelling and screaming had stopped, the occupants of the apartment were not responding to the officers at the door, and Defendants decided to enter the apartment. (*Id*. ¶¶ 13-15, 18-19, 21). Defendants encountered Plaintiff holding her then 8-month-old infant and Mr. Mark Alier, Plaintiff's boyfriend, inside of the apartment. (*Id*. ¶¶ 1, 22; CntrStmt. ¶ 3). Plaintiff was questioned by Defendants and told them that nothing had happened. (Doc. 67-1, "Ferraro Aff." ¶ 12; Goodman Decl., Ex. C "Pl. Tr." at 35:11-12; CntrStmt. ¶ 8; Doc. 68-2, "Pl. Aff." ¶ 8). Plaintiff asserts, and Defendants deny, that the officers "appeared upset that [she] would not make a false statement against [her] boyfriend." (Pl. Aff. ¶ 8; CntrStmt. ¶ 8).

Officer Salazar testified at his deposition that while in the apartment he took photographs of paraphernalia that was found in the child's playpen area—namely, double-knotted, see-through plastic bags of tobacco, rolling papers, a rolling tray, a lighter, and multi-colored packs that featured symbols of a marijuana leaf and warnings to keep out of reach of children. (Doc. 65-5, "Salazar Tr." at 46:24-47:8; 48:3-7, 54:6-56:19, 57:24-58:16; Goodman Decl., Ex. F). Plaintiff contends that Defendants staged the scene and took photographs of the paraphernalia in the child's playpen area "in an effort to fraudulently charge [her] with child [endangerment] or other crimes" to Child Protective Services ("CPS"). (Pl. Aff. ¶ 11; CntrStmt. ¶ 11; Pl. Tr. at 37:10-38:2; 56.1 ¶¶ 31-32). Plaintiff claims that she tried to prevent the officers from taking the staged photos but was told that if she stood in the way, she would be arrested. (Pl. Aff. ¶ 12; CntrStmt. ¶ 12). Plaintiff also claims that one of the Defendants told her that he would report her to CPS. (Pl. Aff. ¶ 13; CntrStmt. ¶ 13). Neither Plaintiff nor Mr. Alier were taken into custody and neither party was charged with any violation or crime. (56.1 ¶ 28).

On October 16, 2021, Officer Salazar made a referral to CPS (56.1 ¶ 33), and CPS opened an investigation. (CntrStmt. ¶ 15; Pl. Aff. ¶ 15; 56.1 ¶¶ 34-50). The CPS investigation involved,

3

*inter alia*, an evaluation of Plaintiff's mental health, and it was ultimately closed as "indicated." (56.1 ¶¶ 34, 50; CntrStmt. ¶ 20; Pl. Aff. ¶ 20; Am. Compl. ¶ 56; Goodman Decl., Ex. G).[4] While the parties dispute exactly what "indicated" means, it is undisputed that no child protective proceedings were commenced against Plaintiff in Family Court or any other court as a result of the CPS report. (Pl. Br. at 10; Def. Br. at 12).

This litigation followed.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-03875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[5] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-

---

[4] The CPS records submitted as Exhibit G to the Goodman Declaration provide a detailed account of the steps taken during the CPS Investigation. Plaintiff objects to the Court's consideration of the CPS records as "uncertified," containing hearsay, and not fitting within any exception under Federal Rule of Evidence 803. (Pl. Br. at 10; 56.1 ¶¶ 39-50). Defendants do not respond to Plaintiff's hearsay argument. The Court notes, however, that a record certification is submitted with the CPS records that states that the records are maintained in the regular course of the Westchester County Department of Social Services' business. (Goodman Decl., Ex. G at 2). Evidence need not be submitted in trial-admissible form on summary judgment, as long as it could be presented in that form at trial. *Jacobs v. New York City Dep't of Educ.*, 768 F. App'x 86, 88 (2d Cir. 2019) ("[M]aterial relied on at summary judgment need not be admissible in the form presented to the district court . . . so long as the evidence in question will be presented in admissible form at trial, it may be considered on summary judgment."). In any event, the Court need not rely on the CPS records to resolve the instant motion in light of the undisputed facts discussed *supra* and, therefore, declines to address the hearsay objection.

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023) (citing *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *McKinney*, 49 F.4th at 738 (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at *4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be

drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

## **ANALYSIS**

A malicious abuse of process claim made under § 1983 incorporates the corresponding state law elements of abuse of process. *Sforza v. City of New York*, No. 07-CV-06122, 2009 WL 857496, at *16 (S.D.N.Y. Mar. 31, 2009). To state such a claim, Plaintiff must show that Defendants "'(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" *Id.* (quoting *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003)). Further, the "collateral objective" requirement means that Defendants "must have an improper purpose or objective in instigating the action beyond the plaintiff's criminal prosecution." *Id.* at *17.

Defendants first argue that Plaintiff's abuse of process claim fails because Plaintiff was not subjected to "regularly issued process." (Def. Br. at 15-16). Plaintiff contends that "filing false

6

information and maliciously starting an administrative proceeding against plaintiff, like a CPS case, qualifies for a malicious abuse of process claim." (Pl. Br. at 12).[6] The Court agrees with Defendants.

"[L]egal process means that a court issued the process, and the plaintiff will be penalized if he violates it." *Fernandez v. City of New York*, 457 F. Supp. 3d 364, 388 (S.D.N.Y. 2020) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)). "Process is a 'direction or demand that the person to whom it is directed shall perform or refrain from the doing of some prescribed act.'" *Blanco v. Success Acad. Charter Sch., Inc.*, No. 23-CV-01652, 2024 WL 965001, at *18 (S.D.N.Y. Mar. 6, 2024) (quoting *Williams v. Williams*, 23 N.Y.2d 592 (1969)). "It follows that there must be an unlawful interference with one's person or property under color of process in order that action for abuse of process may lie." *Id*.

Here, even accepting as true that Defendants staged the scene and the CPS report was false, the CPS referral itself does not establish the requisite "*court*-issued process." *Blanco*, 2024 WL 965001, at *18 (emphasis in original); *see also Walia v. Holder*, 59 F. Supp. 3d 492, 512 (E.D.N.Y. 2014) (finding that an administrative referral to an agency's disciplinary body was insufficient to sustain a claim for abuse of process); *Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC*, 11-CV-03327, 2013 WL 417406, at *16 (S.D.N.Y. Feb. 4, 2013) ("[T]he [State Liquor Authority] proceeding does not fall within the definition of 'process' for the purpose of an abuse of process claim in New York because it is not a court proceeding."). It is undisputed that Defendants filed a report to CPS and that CPS subsequently investigated Plaintiff. Plaintiff does

---

[6] Plaintiff's cited cases pertain to malicious prosecution claims and are inapplicable to the abuse of process claim at issue here. (Pl. Br. at 12 (citing *Groat v. Town Bd. of Town of Glenville*, 73 A.D.2d 426 (3d Dep't 1980); *Perryman v. Vill. of Saranac Lake*, 41 A.D.3d 1080 (3d Dep't 2007)). Indeed, Plaintiff expressly waived her claim for malicious prosecution on September 19, 2022. (Doc. 32).

not contend that the CPS referral and investigation resulted in any child protective proceedings, nor any other civil or criminal proceedings. Accordingly, Plaintiff has failed to establish that she was subject to any "regularly issued legal process." *Scollar v. City of New York*, 160 A.D.3d 140 (1st Dep't 2018) (affirming dismissal of abuse of process claim where officer filed numerous unfounded complaints with New York City Administration for Children's Services because "no process, criminal or civil, was issued" against the plaintiff); *see also Blanco*, 2024 WL 965001 *18 ("[T]he fact that the school filed a complaint with [New York City Administration for Children's Services] against [plaintiff] is not sufficient to give rise to a claim of abuse of process.").[7]

Plaintiff further argues that she has been subject to legal process because the consequences of being "indicated" by CPS, "without a hearing [or] any opportunity to challenge the assessment," means that other entities may be notified of the existence of the report against Plaintiff. (Pl. Br. at 12-13). Defendants contend that this statement is untrue, given that Plaintiff could have pursued an administrative appeal to expunge inaccurate information from the State Central Registry pursuant to Social Services Law §422(8). (Def. Br. at 8). Regardless of the accuracy of Plaintiff's argument, the hypothetical consequences of the CPS investigation do not establish that legal process was issued here.

---

[7] *See also Dobies v. Brefka*, 273 A.D.2d 776 (3d Dep't 2000) ("The 911 call does not give rise to an abuse of process claim because, although the Sheriff investigated the complaint, no process was issued nor was a proceeding initiated."); *Fernandez v. City of New York*, 457 F. Supp. 3d 364, 387-88 (S.D.N.Y. 2020) ("[A]n arrest does not amount to 'regularly issued legal process' for purposes of a malicious abuse of process claim"); *c.f. Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 232 (E.D.N.Y. 2010), *on reconsideration in part*, 814 F. Supp. 2d 242 (E.D.N.Y. 2011) (finding the issuance of tickets to plaintiffs constituted regularly issued process where the tickets required a personal appearance and a penalty was prescribed under section 215.58 of the Penal Law for failure to appear on the return date).

Plaintiff has failed to establish that she was subject to any regularly legal issued process and, accordingly, summary judgment in favor of Defendants dismissing the malicious abuse of process claim is warranted.[8]

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

The Clerk of Court is respectfully requested to terminate the pending motion sequence (Doc. 64) and close this case.

SO ORDERED.

Dated:  White Plains, New York
          October 25, 2024

_____
Hon. Philip M. Halpern
United States District Judge

---

[8] Defendants also seek summary judgment dismissing the Amended Complaint on the basis that they are entitled to qualified immunity. (Def. Br. at 21-23). Given the conclusions reached herein, the Court need not and does not reach this argument regarding qualified immunity.